# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00787-CV

**Jose Luis Garza, individually and d/b/a My Three Daughters Farms and Blanca C. Garza, individually and d/b/a My Three Daughters Farms, Appellants**

**v.**

**Texas Boll Weevil Eradication Foundation, Inc., Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-07-008942, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

**&**

## NO. 03-11-00788-CV

**Jose Luis Saenz, Appellant**

**v.**

**Texas Boll Weevil Eradication Foundation, Inc., Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-07-008891, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

**&**

Armando Gonzalez, Appellant

v.

Texas Boll Weevil Eradication Foundation, Inc., Appellee

FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
NO., C-1-CV-07-008924, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

&

NO. 03-11-00790-CV

Eusebio Saenz, Jr., Appellant

v.

Texas Boll Weevil Eradication Foundation, Inc., Appellee

FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
NO. C-1-CV-07-008892, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Jose Luis Garza and Blanca C. Garza, individually and d/b/a My Three Daughters Farms, Jose Luise Saenz, Armando Gonzalez, and Eusebio Saenz, Jr. (collectively, the "Farmers") were each sued by the Texas Boll Weevil Eradication Foundation, Inc. (the

2

"Foundation"). The Foundation filed the suits seeking to collect assessments levied against the Farmers for the year 2006. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009) (current version at Tex. Agric. Code Ann. § 74.113 (West Supp. 2011)) (providing that Foundation is responsible for collection of assessments). In response to the parties' competing motions for summary judgment, the district court granted summary judgments in favor of the Foundation and denied the Farmers' motions. In these consolidated appeals, the Farmers contend that the summary judgments should be reversed because the summary judgment evidence establishes that in 2006 they were not "cotton growers," as defined in section 74.102(5) of the agriculture code, and therefore are not subject to the Foundation's 2006 assessment. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009) (current version at Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011)) (defining "cotton grower"). Because we agree that undisputed summary-judgment evidence establishes that the Farmers were not cotton growers in 2006 and are not subject to the 2006 assessment, in each cause we reverse the trial court's grant of summary judgment and render summary judgment in favor of the Farmers.

## BACKGROUND

Chapter 74 of the Texas Agriculture Code designates the Foundation, a nonprofit corporation, as the entity charged with planning, carrying out, and operating programs to aid in the eradication of the boll weevil and the pink bollworm from cotton in Texas, under the supervision of the Texas Department of Agriculture. *See* Tex. Agric. Code Ann. § 74.1011 (West 2004). Chapter 74 also establishes the creation of six geographic zones, called "eradication zones," and delegates to the commissioner of agriculture the authority to designate additional eradication zones, subject to

3

referendum approval by affected cotton growers in the proposed zone. *Id*. at §§ 74.1041, .1042 (West 2004). Subject to further referendum approval by the cotton growers in an eradication zone, the Foundation is authorized to collect assessments levied on cotton growers in that zone. Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009). The Foundation calculates and collects the assessments on an annual basis, which are used, in part, to fund eradication programs. *See* 4 Tex Admin. Code §§ 3.502 (Tex. Dep't of Agric., Approval of Assessment Rates and Collection Dates) (upon yearly recommendation of the Foundation, the commissioner determines the assessment rate and due date for each zone), 3.504 (2012) (Tex. Dep't of Agric., Payment of Assessments, Incentives for Early Payment; Penalties for Late Payment; Website) (assessments are due in full by due date set by commissioner each year); *see also* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009).

In 2006, the Foundation levied assessments against the Farmers, who farm in the Lower Rio Grande Valley Eradication Zone. When the Farmers failed to pay the assessments, the Foundation filed four separate but substantively identical suits against the Farmers, seeking to recover the 2006 assessments. *See* Tex. Agric. Code Ann. § 74.115 (West 2004). The Foundation then moved for summary judgment in all four causes. The Farmers responded to each motion for summary judgment, objecting to the Foundation's summary-judgment evidence and claiming that the Foundation had failed to establish that the Farmers owe the 2006 assessments because (1) they are not "cotton growers" as defined by section 74.102(5) of the agriculture code; (2) the assessment is void because the assessment rate for 2006 was recommended and adopted in violation of the Texas Open Meetings Act, chapter 551 of the government code; and (3) chapter 74 on its face violates the

4

Farmers' right to procedural due process under the Texas and federal constitutions and the Open Courts provision of the Texas Constitution. The Farmers also filed cross-motions for summary judgments, affirmatively raising these same issues and asserting that they do not owe the 2006 assessments as a matter of law. Upon considering the motions, in each cause the trial court denied the Farmers' motion for summary judgment and granted the Foundation's motion for summary judgment.[1]

These appeals followed. In one issue, the Farmers challenge the trial court's denial of their summary-judgment motions and the grant of the Foundation's summary-judgment motions. The Farmers argue that the trial court erred because the undisputed evidence establishes that they are not "cotton growers," as defined by section 74.102(5) of the agriculture code.[2]

## STANDARD OF REVIEW

Summary judgment is proper if the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one essential element of a plaintiff's

---

[1] In four separate final judgments, the trial court awarded the Foundation (1) assessments and late fees against Eusebio Saenz, Jr. in the amount of $39,211.25, attorney's fees and costs in the amount of $617, and post-judgment interest; (2) assessments and late fees against Jorge Luis Garza and Blanca Garza in the amount of $42,387.49, attorney's fees and costs in the amount of $692, and post-judgment interest; (3) assessments and late fees against Jorge Luis Saenz in the amount of $16,387.14, attorney's fees and costs in the amount of $684, and post-judgment interest; and (4) assessments and late fees against Armando Gonzalez in the amount of $8,435.86, attorney's fees and costs in the amount of $747, and post-judgment interest.

[2] Originally, the Farmers also appealed on the alternative grounds raised in their responses to the Foundation's motions for summary judgment as well as their own motions for summary judgment. However, the Farmers subsequently withdrew their appeals on these alternative issues.

5

cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003). We review a trial court's rulings on summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex 2005). When, as in this case, both parties move for summary judgment on the same issues and the trial grants one motion and denies the other, we will consider the summary-judgment evidence presented by both sides, determine all questions presented, and if we find that the trial court erred, render the judgment the trial court should have rendered. *Id*.

The Farmers' argument on appeal is primarily based on construction of the Texas Agricultural Code, specifically the definition of "cotton grower" under chapter 74 of the code. Statutory construction is a legal question that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, following first and foremost the plain language of the statute. *Id.* at 631-32; *GMC v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). In addition, we look to the entire act in determining the legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011). We read every word, phrase, and expression in a statute as if it were deliberately chosen, and we presume that the exclusion of words from the statute is done purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). Where the statutory language at issue is ambiguous, its construction by an agency charged with its enforcement is ordinarily entitled to serious consideration so long as the agency's construction is reasonable. *Texas Citizens*, 336 S.W.3d at 625 (citing *Fiess v. State Farm Lloyds*,

202 S.W.3d 744, 747-48 (Tex. 2006)). Further, in applying this deference, we consider an agency's "formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions [in a court brief]." *Id.*

## DISCUSSION

Only "cotton growers," as defined by section 74.102(5), are subject to assessments levied by the Foundation. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.15, 1997 Tex. Gen. Laws 1769, 1776 (amended 2009) (providing that commissioner shall propose "maximum assessment to be paid by cotton growers" and that "foundation may collect the assessment"); *see also* Tex. Agric. Code Ann. § 74.115 (providing that "a cotton grower who fails to pay an assessment levied under this subchapter may be subject . . . to a penalty set by the commissioner"). While section 74.102(5) has been amended several times since its enactment, most recently in 2009, this case is governed by the version of section 74.102(5) in effect in 2006.[3] Under this version of section 74.102(5), "cotton grower" means:

> a person who grows cotton and receives income from the sale of cotton. The term includes an individual who as owner, landlord, tenant, or sharecropper is entitled to share in the cotton grown and available for marketing from a farm or to share in the proceeds from the sale of the cotton from the farm.

---

[3] Section 74.102(5) now defines "cotton grower" as:

> a person who grows cotton intended to be commercial cotton. The term includes an individual who as owner, landlord, tenant, or sharecropper is entitled to share in the cotton grown and available for marketing from a farm or to share in the proceeds from the sale of the cotton from the farm or from an indemnity or other payment received from or related to the planting, growing, or failure of the cotton.

Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011).

7

Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009).

The material facts in this case are undisputed. All of the Farmers planted cotton in 2006; however, as a result of drought, none of the crops succeeded and no cotton was sold on the market. Instead, the Farmers received crop insurance proceeds for their failed crops. In addition, some of the Farmers received federal disaster relief payments for 2006. The Farmers argue that, under these facts and the unambiguous language of the statute, none of them meet the statutory definition of "cotton grower." Specifically, they argue that in order to be cotton growers they must (1) grow cotton and (2) receive income from the sale of the cotton. Therefore, because the undisputed evidence shows that none of the Farmers grew cotton in 2006 or received income from the sale of cotton in 2006, the Farmers contend that they cannot be considered cotton growers for purposes of the 2006 assessment.

The Foundation makes three arguments in response to the Farmers' contention that they are not cotton growers. First, the Foundation argues that the Farmers are cotton growers because section 74.102(5) includes "an individual who as owner, landlord, tenant, or sharecropper is entitled . . . to share in the proceeds from the sale of the cotton from the farm" and "it is undisputed that the Farmers planted cotton in 2006 and were entitled to share in the proceeds from the sale of that cotton." *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). Second, the Foundation argues that the Farmers, with the exception of Eusebio Saenz, are cotton growers because the evidence shows that the Farmers planted cotton and received income on the sale of cotton before 2006. Third, the Foundation contends that

8

because the Farmers planted cotton in 2006 and received income by way of crop insurance proceeds and government subsidies in 2006 to replace "income from the sale of cotton," they are considered cotton growers for purposes of the 2006 assessment.

**Construction of section 74.102(5)**

We first consider whether the Farmers' proposed construction of section 74.102(5) is reasonable. The Farmers' argument with regard to the proper construction of section 74.102(5) is simple. In arguing that they are not cotton growers under the statute, the Farmers focus on the first sentence of section 74.102(5), which defines "cotton grower" as "a person who grows cotton and receives income from the sale of cotton." The Farmers argue that unless both prongs of this definition are met, they cannot be considered cotton growers.

The language in the first sentence of section 74.102(5) is seemingly straightforward and, in isolation, its plain meaning is readily apparent—a person is a cotton grower only if he or she (1) grows cotton and (2) receives income from the sale of cotton. There is no language in this portion of section 74.102(5) that would suggest that the words chosen by the legislature in this first sentence mean anything other than their common, ordinary meaning. *See Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) ("In discerning [legislative] intent, we begin with the 'plain and common meaning of the statute's words.'").

However, when interpreting a statute we do not look to any one phrase, clause or sentence in isolation, but to the statute as a whole. *City of Sunset Valley*, 146 S.W.3d at 642. Further, we must attempt to harmonize the statute's various provisions. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002). With these principles of statutory construction in mind, we

9

consider the Foundation's first argument, urging us to consider the second sentence of section 74.102(5) and conclude that a person may be considered a cotton grower even when there is no sale of cotton.

The Foundation argues that even if the Farmers did not "grow[] cotton and receive[] income from the sale of cotton," the Farmers are nevertheless cotton growers under the second sentence of section 74.102(5). *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). The second sentence of section 74.105(5) states that the term "cotton grower . . . includes an individual who as owner, landlord, tenant, or sharecropper is entitled . . . to share in the proceeds from the sale of the cotton from the farm." *Id*. The Foundation asserts that this language demonstrates the legislature's intent not to limit the definition to individuals who grow and receive income from the sale of cotton.[4] Therefore, the Foundation argues, the Farmers are cotton growers because it is undisputed that they planted cotton in 2006 and were "entitled to share in the proceeds from the sale of that cotton."

Because the undisputed evidence is that the Farmers did not sell any cotton in 2006, we take the Foundation's argument to mean that a person is considered a cotton grower under the statute if he or she, as a result of his or her connection to the land, *would be* entitled to share in proceeds, *if and when there are any*, from the sale of the cotton from the farm, *if and when there is any*. In other words, the Foundation argues that an individual may be considered a cotton grower

---

[4] The first sentence of section 74.102(5) no longer states that "cotton grower" means "a person who grows cotton and receives income from the sale of cotton." Instead, the first sentence of section 74.102(5) currently provides that "cotton grower" means "a person who grows cotton intended to be commercial cotton." *See* Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011).

10

if they might be entitled to receive proceeds in the future. For the following reasons, we disagree that the legislature intended to allow the Foundation to levy assessments on individuals who would be "entitled" to proceeds in the theoretical sense suggested by the Foundation.

First, we start with the proposition that when construing the second sentence of section 74.102(5) we must read it together with the first sentence if possible. *See* Tex. Gov't Code Ann. § 311.021(2) (West 2005) (it is presumed that entire statute is intended to be effective). Under the second sentence of section 74.102(5), the definition of cotton grower "includes" individuals who, by virtue of their connection with the land, are entitled to a share in the proceeds from the sale of the cotton. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). The word "includes" is generally a term of enlargement, not of limitation or exclusive enumeration. Tex. Gov't Code Ann. § 311.005(13) (West 2005). In other words, the list following the word "includes" is not intended to be exhaustive. *See id*. Moreover, there is no indication that the legislature intended to altogether dispense with the specific requirements set forth in the first sentence of section 74.102(5) that there be cotton grown and that there be income from *the sale of cotton*. *See City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008) (if general provision conflicts with special provision, provisions shall be construed if possible, so that effect is given to both). Rather, reasonably construing the statutory definition as a whole, an individual is a "cotton grower" under the second sentence of section 74.102(5) only when there are proceeds from the actual sale of cotton grown.

Second, we note that our construction of the second sentence of section 74.105(5) is consistent with the rule that courts must not give the words used by the legislature an "exaggerated,

11

forced, or constrained meaning." *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 931 (Tex. 2010) (quoting *City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002)). In this case, the legislature could have made clear that the definition of cotton grower includes an individual who *would be* entitled to a share of the proceeds, *if and when there are any*, from the sale of the cotton from the farm, *if and when there is any*. However, the legislature did not do so, and we will not presume that the legislature intended to include these words when there is nothing in the language of the statute indicative of such intent. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision."); *see Gables Realty Ltd. P'ship*, 81 S.W.3d at 873 (noting that courts should "presume the words excluded from the statute are done so purposefully").

Construing the statute as a whole, in a manner that gives effect to each sentence, clause, phrase, and word to the extent possible, we conclude that a person is a cotton grower under section 74.102(5) if that person (1) grows cotton and receives income from the sale of cotton, or (2) is indirectly entitled to share in cotton grown and/or share in proceeds from the sale of cotton, by virtue of his or her connection with the land. *See City of Sunset Valley*, 146 S.W.3d at 642 ("If the statutory language is unambiguous, we interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute."). However, under either part of this definition, the plain language of section 74.102(5) indicates that the legislature intended for a person to be considered a cotton grower only when there is cotton grown and actual income from the sale of cotton. Because the term "sale" is not defined in chapter 74, we simply apply its plain and

12

ordinary meaning. *See* Tex. Gov't Code Ann. § 311.011(a) (West 2005); *see also State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("If the statute is clear and unambiguous, we must apply its words according to their ordinary meaning.").[5]

In this case, the undisputed summary-judgment evidence is that all of the Farmers planted cotton in 2006; however, as a result of drought, none of the crops succeeded and no cotton was sold. Therefore, under the plain meaning of the statute, the Farmers did not receive "income from the sale of cotton" in 2006 and thus were not cotton growers under chapter 74.[6]

While our analysis would appear to end here, the Foundation contends that the Farmers should nevertheless be considered cotton growers for purposes of the 2006 assessment. The Foundation argues that the Farmers did, in fact, receive "income from the sale of cotton" because the Farmers (1) received income from the sale of cotton in previous years and (2) received income from the sale of cotton in the form of insurance payments and government subsidies in 2006. We now turn to these remaining arguments.

**Income from the sale of cotton in past years**

The Foundation argues that the Farmers, with the exception of Eusebio Saenz, are cotton growers for purposes of the 2006 assessment because they have grown cotton and received

---

[5] A dictionary definition of "sale" is "transferring the absolute or general ownership of property from one person or corporate body to another for a price." Webster's Third New Int'l Dictionary 2003 (2002).

[6] To the extent the Farmers contend that they did not "grow[] cotton" under section 74.102(5) because they planted a crop of cotton plants that ultimately failed to produce cotton, we need not decide this issue. *See* Tex. R. App. P. 47.1 (court of appeals must hand down opinions that are as brief as possible while addressing those issues necessary to final disposition of appeal).

income on the sale of cotton in previous years.[7] The Foundation explains that the language of section 74.102(5) is not limited to a particular year, and therefore a person is qualified as a "cotton grower" if he or she has received income from the sale of cotton at any time. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). In essence, the Foundation asserts "once a cotton grower, always a cotton grower." Construing the statute as a whole, we disagree with the Foundation's proposed construction. *See Texas Citizens*, 336 S.W.3d at 628.

Under chapter 74, the commissioner of agriculture proposes, and eligible cotton growers in each eradication zone approve by referendum, (1) the maximum assessment to be paid by cotton growers having production in the eradication zone and (2) the time for which any assessment will be made. Act of May 8, 1995, 74th Leg., R.S., ch. 227, § 9, 1995 Tex. Gen. Laws 1976, 1979 (amended 2009). The commissioner then sets on a zone-by-zone basis the assessment rate and the date on which assessments are due and payable. *Id.* The Foundation calculates and levies the assessments on an annual basis. *See id.*; *see also* Tex. Admin. Code §§ 3.502, .504. The Foundation is also responsible for collecting the assessment as well as preparing and mailing billing statements to "each cotton grower subject to the assessment." Act of May 8, 1995, 74th Leg., R.S., ch. 227, § 9, 1995 Tex. Gen. Laws 1976, 1979 (amended 2009). When a cotton grower fails to pay an assessment when due, the Foundation may acquire a lien "on cotton produced and harvested that year from the acreage that is subject to the assessment that is due and unpaid." Tex. Agric. Code Ann. § 74.115. Examining the statute as a whole, we conclude that the statute may be reasonably

---

[7] The undisputed evidence shows that Eusebio Saenz never even attempted to grow cotton prior to 2006.

construed as allowing the Foundation to levy an assessment against a person who is a cotton grower during the assessment year. As a result, the Farmers are subject to the 2006 assessment only if they were cotton growers in 2006.

Under the Foundation's proposed interpretation, a person that has grown cotton in the past but no longer grows cotton, and has no intention of ever doing so again in the future, would nevertheless be required to pay assessments in perpetuity. Because this is an absurd result, we conclude that this is an unreasonable interpretation of the statute which we cannot adopt. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (noting that court cannot adopt construction that leads to absurd results). The fact that the Farmers may have grown cotton and received income from the sale of cotton before 2006 is not relevant to whether they are cotton growers for purposes of the 2006 assessment.

**Income from crop insurance proceeds, government subsidies, and disaster payments**

Finally, we turn to the Foundation's argument that anyone who receives crop insurance payments, government subsidies, or disaster payments in lieu of income is also a cotton grower under section 74.102(5). Specifically, the Foundation argues these payments are "income" that replace the income that the Farmers would have received if they had sold their cotton in 2006.[8] For the following reasons, we also find this argument unpersuasive.

Under the first sentence of 74.102(5), "income from the sale of cotton" is required in order for a person to be considered a cotton grower. Similarly, under the second sentence of

___

[8] Section 74.102(5) now specifically mentions "indemnity or other payment received from or related to the planting, growing, or failure of the cotton." Tex. Agric. Code Ann. § 74.102(5) (West Supp. 2011).

section 74.102(5), the definition of cotton grower may include a person who is entitled to "share in proceeds from the sale of the cotton from the farm." While insurance and subsidy payments may represent "income" or "proceeds," we cannot agree that these payments represent income or proceeds "from the sale of cotton." While insurance and subsidy payments may be designed to replace income that would have been made on cotton sales, *if there had been any*, the payments are not made in exchange for the transfer of property. Therefore, the payments themselves are not income or proceeds "from the sale of cotton." Further, under the plain language of the statute, there is no indication that the legislature intended to include funds designed to *replace* lost income in the phrase "income from the sale of cotton" or "proceeds from the sale of cotton." *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

In conclusion, under the unambiguous language of section 74.102(5) a person is a cotton grower for purposes of the Foundation's 2006 assessment if he or she grew cotton and received income from the sale of cotton in 2006.[9] *See* Act of May 29, 1997, 75th Leg., R.S., ch. 463, § 1.03, 1997 Tex. Gen. Laws 1769, 1770 (amended 2009). In addition, a person is a cotton grower under section 74.102(5) if he or she is entitled to share in cotton that is grown in 2006 (and available for marketing from a farm) or to share in the proceeds from cotton sold in 2006. *Id*. In this case, the undisputed summary-judgment evidence shows that the Farmers did not sell any cotton in 2006,

---

[9] Because we conclude that section 74.102(5) is unambiguous, we do not consider whether any interpretation of this provision by the Texas Department of Agriculture is entitled to deference from this court. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011).

directly or indirectly. Thus, in 2006 the Farmers did not receive "income from the sale of cotton" and were not "entitled to share in the proceeds from the sale of the cotton." Accordingly, the Farmers were not cotton growers under section 74.102(5) of the agriculture code in 2006, and they are not subject to the 2006 assessment levied by the Foundation. Consequently, the trial court erred in granting the Foundation's motions for summary judgment and denying the Farmers' motions for summary judgment.

## CONCLUSION

In each cause, we reverse the trial court's summary judgment in favor of the Foundation and render summary judgment in favor of the Farmers.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Reversed and Rendered

Filed:   July 25, 2012

17